IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| KIRK JOHN NORTHUP | § | |
| | § | |
| v. | § | C.A. NO. C-10-085 |
| | § | |
| RICK THALER | § | |

## MEMORANDUM AND RECOMMENDATION TO
## GRANT RESPONDENT'S MOTION FOR SUMMARY JUDGMENT

Petitioner is a state prisoner currently incarcerated at the Beto 1 Unit in

Tennessee Colony, Texas.  (D.E. 1).  On March 19, 2010, Petitioner filed this pro

se habeas corpus petition pursuant to 28 U.S.C. § 2254, with a supporting brief,

challenging his conviction.  Id.; (D.E. 3).  Pending is Respondent's motion for

summary judgment.  (D.E. 30).  Petitioner filed a response on June 14, 2010.  (D.E.

32).  Pending also are several motions filed by Petitioner on the same day as his

habeas petition that essentially seek the relief sought in his petition: ex parte

motion, (D.E. 6); motion for judgment of acquittal, (D.E. 11); motion for a new

trial (D.E. 12); and motion for habeas corpus ad subjuciendum, (D.E. 13).  For the

reasons stated herein, it is respectfully recommended that Respondent's motion be

granted, and this habeas action be dismissed.

# I. JURISDICTION

The Court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 2241, 2254, which provide that jurisdiction is proper where the inmate is confined, or where the conviction was obtained.  Wadsworth v. Johnson, 235 F.3d 959, 961-62 (5th Cir. 2002).  Because Petitioner was convicted in Aransas County, Texas, jurisdiction is proper in this Court.  28 U.S.C. § 124(b)(6).

# II. BACKGROUND

On June 24, 2007, Casey Peebles, a cab driver, fell victim to a robbery by one of his passengers.  Northup v. State, No. 13-07-00581-CR, 2009 WL 1623426, at *1 (Tex. App. June 11, 2009) (unpublished).  He had responded to a call for a cab at the Oak Crest Nursing Home in Rockport, Texas around 3:00 a.m. where he picked up his assailant.  Id.  The assailant asked Peebles if he could borrow his cell phone, and Peebles gave it to him.  Id.  Then, after driving less than a quarter-mile, the assailant told Peebles to stop the cab and said he wanted Peebles' money.  Id.  Peebles thought he was holding a knife or box cutter and gave him his cash before the assailant fled the cab.  Id.

Peebles then called the police, and Officer Yarnall arrived soon thereafter.  Id.  He described his assailant to him as "a white male in his mid-thirties, wearing a black shirt and blue jean shorts," who had a tattoo on his left arm.  Id. at *1-2.  He

2

was able to see what the assailant looked like in his cab because of a strip of lights on his dashboard, and when the assailant fled because of street lights.  <u>Id.</u> at *1. The cab company was able to locate the phone number of the person who had called for the cab, so Officer Yarnall returned to his squad car to research the number on his computer.  <u>Id.</u> at *2.  Peebles remained outside of the squad car smoking a cigarette, but saw a picture on Officer Yarnall's computer screen and exclaimed that the man in the picture was his assailant.  <u>Id.</u>  That man was Petitioner.  <u>Id.</u>

Officer Yarnall proceeded to a trailer home listed as Petitioner's address.  <u>Id.</u> Linda King, Petitioner's common-law wife at the time, answered the door, and after Officer Yarnall inquired about Petitioner, got Petitioner to come to the door. <u>Id.</u>  He was wearing khaki shorts but no shirt, "did not appear to be drowsy or sleepy," and his hair and upper body appeared wet like he had just taken a shower. <u>Id.</u>  He denied any involvement in the incident and Officer Yarnall left.  <u>Id.</u> at *2-3. According to King, a couple named Denise and Jeff had been to the trailer at about 2:00 a.m. that morning looking for Michael Bacon, who previously owned the trailer park.  <u>Id.</u> at *3.  She and Petitioner were sleeping when they arrived.  <u>Id.</u> She informed them that he no longer lived there so they used the phone to call for a ride, after which they left.  <u>Id.</u>  King and Petitioner then went back to sleep, and

Petitioner remained asleep until Officer Yarnall arrived.  Id.  King described Jeff as white and "chunky."  Id.  Peebles stated that his assailant was not "chunky."  Id. at *4.

Petitioner was indicted by a grand jury in Aransas County, Texas on July 24, 2007 of aggravated robbery.  Ex parte Northup, WR-72,910-02, at 15-16.  On September 6, 2007, he was convicted of the lesser included offense of robbery by a jury in the 36th Judicial District Court of Aransas County and sentenced to twelve years of imprisonment and a five-hundred dollar fine.  Id. at 17-19.

Proceeding pro se, Petitioner filed a motion for a new trial and a notice of appeal on September 17, 2007.  Northup, 2009 WL 1623426, at *4.  His motion for a new trial was overruled by operation of law on November 20, 2007.  Id.  The district court informed Petitioner's trial counsel of the filings, and he filed a motion to withdraw as counsel on November 25, 2007.  Id.  The motion was granted on November 30, 2007, and Petitioner was appointed new appellate counsel.  Id.  His appeal was denied by the Texas Thirteenth District Court of Appeals on June 11, 2009.  Id. at *1.  He filed a state habeas petition on December 10, 2009, which was denied by the Texas Court of Criminal Appeals without written order on February 17, 2010.  Ex parte Northup, WR-72,910-02, at cover sheet, 13.

### III.  DISCUSSION

Petitioner alleges that he is actually innocent, his due process rights were violated, the evidence supporting his conviction was legally and factually insufficient, and he received ineffective assistance of counsel when his attorney failed to object to the prosecution's case at trial, secure witnesses for his defense, or assist him at a critical stage of his appeal.  (D.E. 1, at 7-8).  Respondent argues that Petitioner's claims are either unexhausted, procedurally barred, or without merit.  (D.E. 30, at 1).

**A.    The Standard Of Review For Summary Judgment Motions.**

Rule 56 of the Federal Rules of Civil Procedure applies to federal habeas corpus cases.  Clark v. Johnson, 202 F.3d 760, 764-65 (5th Cir. 2000) (citations omitted).  Summary judgment is appropriate when there is no disputed issue of material fact, and one party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Courts must consider the record as a whole, including all pleadings, depositions, affidavits, interrogatories and admissions on file, in the light most favorable to the non-movant.  Caboni v. Gen. Motors Corp., 278 F.3d 448, 451 (5th Cir. 2002).

The party seeking summary judgment bears the initial burden of demonstrating an absence of a genuine issue of material fact and informing the

court of the basis for its motion by identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which support its contention.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Williams v. Adams, 836 F.2d 958, 960 (5th Cir. 1988).  Any controverted evidence must be viewed in the light most favorable to the non-movant, and all reasonable doubts must be resolved against the moving party.  See Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990).

If the moving party makes the required showing, then the burden shifts to the non-movant to show that a genuine issue of material fact remains for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986); Fields v. City of S. Houston, 922 F.2d 1183, 1187 (5th Cir. 1991) (citation omitted).  The non-movant cannot merely rest on the allegations of the pleadings, but must establish that there are material controverted facts in order to preclude summary judgment.  Fed. R. Civ. P. 56(e); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986) (citation omitted).  Summary judgment is proper if the non-movant fails to make a showing sufficient to establish the existence of an element essential to his case on which he bears the burden of proof.  Celotex, 477 U.S. at 322-23; ContiCommodity Servs., Inc. v. Ragan, 63 F.3d 438, 441 (5th Cir. 1995) (citations omitted).

**B.**   **Petitioner Failed To Exhaust His Ineffective Assistance Of Counsel Claim That His Attorney Failed To Secure Witnesses On His Behalf.**

Respondent avers that Petitioner failed to exhaust his state court remedies regarding his claim that he received ineffective assistance of counsel when his attorney failed to secure witnesses in his defense.  (D.E. 30, at 8).

A federal writ of habeas corpus from an inmate in state custody shall not be granted unless: (1) the inmate has exhausted his legal remedies in the state courts; (2) state corrective processes are absent; or (3) circumstances render such processes insufficient to protect the individual's rights.  28 U.S.C. § 2254(b)(1). This exhaustion requirement is satisfied when the substance of each claim has been fairly presented to the highest court of the state.  See O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); Fisher v. Texas, 169 F.3d 295, 302 (5th Cir. 1999) (citation omitted); Carter v. Estelle, 677 F.2d 427, 443 (5th Cir. 1982) (citations omitted). The Fifth Circuit has explained that "the state court system must have been presented with the same facts and legal theory upon which the petitioner bases his current assertions."  Ruiz v. Quarterman, 460 F.3d 638, 643 (5th Cir. 2006) (citing Picard v. Connor, 404 U.S. 270, 275-77 (1971)).  The petitioner must also present his claim in accordance with the state court's procedural rules.  Mercadel v. Cain, 179 F.3d 271, 275 (5th Cir. 1999) (per curiam) (citation omitted).  If the petitioner fails in this respect, and "the last state court to consider the claim expressly and

7

unambiguously based its denial of relief on a state procedural default," federal courts are "procedurally barred" from reviewing the claim.  Fisher, 169 F.3d at 300 (citing Coleman v. Thomas, 501 U.S. 722, 729 (1991)).  "This rule of comity reduces friction between the state and federal court systems by avoiding the 'unseem[liness]' of a federal district court's overturning a state court conviction without the state courts having had an opportunity to correct the constitutional violation in the first instance."  O'Sullivan, 526 U.S. at 845 (citations omitted).  In Texas, the highest court for habeas review is the Texas Court of Criminal Appeals. Tex. Code Crim. Proc. art. 4.04; Richardson v. Procunier, 762 F.2d 429, 431-32 (5th Cir. 1985).

Upon review of Petitioner's state habeas petition and its supporting memorandum, Respondent's assertion is correct.  Petitioner listed several ineffective assistance of counsel claims in his state petition – failure to object to the prosecution's case at trial, failure to introduce mitigating evidence at the punishment phase of trial, failure to request a hearing for his motion for a new trial, and failure to assist him in his appeals process – but he never claimed that his attorney failed to call witnesses on his behalf.  See Ex parte Northup, WR-72,910-02, at 10-12, 41-46.  It should be noted, though, that two of the witnesses Petitioner claims should have been called also would have potentially provided mitigating

testimony at sentencing.  (D.E. 3, at 54).  This claim sounds conspicuously like the claim in his state petition that his attorney failed to introduce mitigating evidence at sentencing.  However, the Texas Court of Criminal Appeals did not have the benefit of knowing what Petitioner would argue in his federal petition.  That court could only review those arguments listed in his state petition, and it could not have inferred from his general mitigation claim that he also faulted his attorney for failing to secure witnesses on his behalf.  Therefore, this specific claim was never presented to the highest court in Texas.

Accordingly, it is respectfully recommended that Petitioner failed to exhaust his state court remedies regarding his ineffective assistance claims that his attorney failed to secure witnesses on his behalf.

**C.     Petitioner's Actual Innocence Claim Is Without Merit.**

Petitioner claims he is actually innocent of the underlying crime.  (D.E. 1, at 7).  To support this claim, he asserts that the victim described the assailant as having a tattoo on his left arm, and an existing police record concerning him also described him as having a tattoo on his left arm, yet he does not in fact have a tattoo on his left arm and that fact was kept from the jury even though they sent a note to the court during deliberations asking whether Petitioner had such a tattoo. (D.E. 3, at 8-9).  He further supports his claim with King's testimony that he never

9

left their trailer home on the night of the crime.  Id. at 9.

The Supreme Court has explained that an actual innocence claim supported by newly discovered evidence is not a cognizable habeas claim without alleging some independent constitutional violation.  Herrera v. Collins, 506 U.S. 390, 400 (1993); accord Dowthitt v. Johnson, 230 F.3d 733, 741 (5th Cir. 2000) (citing Herrera).  Indeed, "habeas jurisprudence makes clear that a claim of 'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise [procedurally] barred constitutional claim considered on the merits."  Herrera, 506 U.S. at 404; accord Dowthitt, 230 F.3d at 741 (citation omitted); Jackson v. Dretke, 181 F. App'x 400, 405 (5th Cir. 2006) (unpublished) (citing Schlup v. Delo, 513 U.S. 298, 316 (1995)) ("A petitioner may prove actual innocence to overcome a procedural default, allowing a federal habeas court to reach the merits of an otherwise barred constitutional claim.").  As the Supreme Court emphasized in Herrera, "'the existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus.'"  506 U.S. at 400 (quoting Townsend v. Sain, 372 U.S. 293, 317 (1963) (overruled on other grounds)).  Newly discovered evidence is that "which could not reasonably have been presented to the state trier of facts."  Townsend, 372 U.S. at 317.

10

Here, Petitioner frames his actual innocence claim as an independent constitutional claim.  It must fail for that purpose.  See Herrera, 506 U.S. at 400.  Additionally, in viewing his claim as a potential mechanism for presenting independent, procedurally barred claims, all but one of Petitioner's independent constitutional claims come to this Court having satisfied procedural requirements.  Therefore, his actual innocence claim is unnecessary to present those particular claims in this petition.  It would be necessary, however, to open the gateway for his sole procedurally barred claim – that he received ineffective assistance of counsel when his attorney failed to call witnesses in his defense.  See Schlup, 513 U.S. at 316.

Nevertheless, even with regard to this claim, Petitioner's actual innocence claim must fail as he presents no newly discovered evidence.  The full extent of the evidence he offers in support of his actual innocence claim either was in fact presented to the jury – the testimony of King – or could have reasonably been presented – the allegedly non-existent tattoo.  See Townsend, 372 U.S. at 317.

Accordingly, it is respectfully recommended that Petitioner's actual innocence claim is without merit.

**D.     Petitioner's Due Process Claims Are Without Merit.**

Petitioner claims two violations of his due process rights.  (D.E. 1, at 7).

First, he claims he was prevented from contacting his attorney for forty-five days.

(D.E. 3, at 16).  Prisoners have a constitutionally protected right of access to the

courts.  Lewis v. Casey, 518 U.S. 343, 360 (1996) (citing Bounds v. Smith, 430

U.S. 817 (1977)).  The right of access to the courts is available to both pre-trial

detainees and convicted inmates.  Taylor v. Sterrett, 532 F.2d 462, 472-73 (5th Cir.

1976) (citation omitted).  However, this is not a "freestanding right," and the

prisoner must demonstrate actual injury resulting from an alleged violation.

Chriceol v. Phillips, 169 F.3d 313, 317 (5th Cir. 1999) (citing Lewis, 518 U.S. at

351-54).  The Supreme Court has explained that "[a]ctual injury" is "actual

prejudice with respect to contemplated or existing litigation, such as the inability to

meet a filing deadline or to present a claim."  Lewis, 518 U.S. at 349.  Without

showing an actual injury, a prisoner lacks standing to claim denial of access to the

courts.  Id. at 349.

Although Petitioner asserts that the court clerk provided him with the

incorrect contact information for his appointed counsel, which he claims prevented

him from communicating with his counsel until forty-five days after the

appointment of counsel, he did not suffer any actual injury as a consequence.  He

claims that this period in which there was no contact hindered him from communicating facts to his attorney, building an effective and adequate defense, and obtaining witnesses for this defense. However, he did in fact eventually meet with his counsel on July 25, 2007. (D.E. 3, at 16). Furthermore, his counsel prepared a defense and presented it at trial, at which he also called King to testify in Petitioner's defense. Id. at 3. Moreover, he does not make specific claims as to how his defense was ineffective or inadequate, let alone connect any shortcomings to the forty-five-day period. Therefore, this claim is baseless and conclusory, and should be dismissed as such. See Koch v. Puckett, 907 F.2d 524, 530 (5th Cir. 1990) (citations omitted) ("'mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue'").

Second, Petitioner claims that his due process rights were violated when the prosecution failed to disclose a copy of the picture that appeared on Officer Yarnall's computer screen on the night of the incident whereby Peebles identified Petitioner. (D.E. 1, at 7); (D.E. 3, at 19-20). He asserts that twenty-five minutes before his trial, his counsel informed him that the prosecution intended to elicit testimony from a witness that Peebles saw Petitioner's picture the night of the incident on Officer Yarnall's computer screen. Id. at 20. He also asserts that the prosecution never disclosed a copy of the picture to the defense. Id.

Importantly, however, the picture was never introduced, and it was defense counsel that first elicited testimony from Peebles regarding the picture.  Reporter's Record, Volume 4 of 4 at 59.  The prosecution discussed how Peebles saw the picture with Officer Yarnall only after the defense brought up the matter first.  Furthermore, Petitioner does not claim that his counsel had not previously seen a copy of the picture, or that his counsel accused the prosecution of failing to produce a copy during discovery.  Indeed, all he has alleged is that he did not personally view a copy of the picture before trial, and that the prosecution planned to talk about the picture with witnesses.  This claim of prosecutorial misconduct is, therefore, nothing more than a baseless and conclusory accusation, and should also be dismissed.  See Koch, 907 F.2d at 530.

Accordingly, it is respectfully recommended that Petitioner's due process claims are without merit.

**E.     Petitioner's Insufficient Evidence Claim Must Fail.**

Petitioner claims there was insufficient evidence to support his conviction. (D.E. 1, at 7).  In determining whether the evidence was sufficient, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 319 (1979)

14

(emphasis in original) (citation omitted); accord Dupuy v. Cain, 201 F.3d 582, 589

(5th Cir. 2000) (citing Jackson).  "[A]ll reasonable inferences are drawn in support

of the verdict."  United States v. Cyprian, 197 F.3d 736, 740 (5th Cir. 1999)

(citation omitted).  Furthermore, the habeas court must accept the credibility

choices of the jury, and must not reweigh the evidence.  Id.

The relevant Texas Penal Code for the year Petitioner was convicted

establishes the elements of burglary:

> (a) A person commits an offense if, in the course of
> committing theft as defined in Chapter 31 and with intent
> to obtain or maintain control of the property, he:
>
>> (1) intentionally, knowingly, or recklessly causes
>> bodily injury to another; or
>>
>> (2) intentionally or knowingly threatens or places
>> another in fear of imminent bodily injury or death.

Tex. Penal Code Ann. § 29.03 (West 2003).  In pertinent part, Chapter 31 defines

the elements of theft:

> (a) A person commits an offense if he unlawfully
> appropriates property with intent to deprive the owner of
> property.
>
> (b) Appropriation of property is unlawful if:
>
>> (1) it is without the owner's effective consent.

Tex. Penal Code Ann. § 31.03 (West 2003).

At trial, Peebles identified Petitioner as the man that robbed him.  Reporter's Record, Volume 4 of 4, at 34.  He testified that he picked up his assailant in his cab, and after telling him to stop the car, the assailant told him that he wanted Peebles' money.  Id. at 31-32.  Peebles further testified that he thought his assailant had a knife or box cutter, and that he was afraid that his assailant might stab him unless he complied.  Id. at 32-33.  He explained that he was able to get a look at his assailant at the time of the incident because street lights outside the cab and a light on his dash provided enough illumination.  Id. at 40.

Officer Yarnall testified that he was able to connect the phone number used to request the cab to a phone owned by Petitioner.  Id. at 65-67.  Furthermore, he explained that while he was looking up Petitioner's information on his squad car computer, Peebles inadvertently saw Petitioner's picture and identified him immediately as his assailant without prompting.  Id. at 66-67.  Finally, Peebles told Officer Yarnall that he sprayed the assailant with pepper spray, but that he was unsure where the spray made contact, or if it made contact at all.  Id. at 64.  When Officer Yarnall arrived at Petitioner's trailer home, which was about a quarter-mile from the location of the robbery, Petitioner came to the door without a shirt appearing to be wet from just taking a shower.  Id. at 68-71.

There is more than enough evidence for a rational trier of fact to find all the

elements of the Texas robbery statute beyond a reasonable doubt.  First, the assailant demanded and took Peebles' money, and Peebles testified that he was afraid he might be stabbed if he did not comply.  Second, Peebles identified Petitioner as his assailant shortly after the robbery took place, and again in court. He was able to do so because he saw his assailant's face by the light from his dash and nearby street lights.  Third, Petitioner's phone was used to call the cab company to request a cab.  Finally, Peebles sprayed pepper spray in the direction of his assailant, and shortly after the incident, Petitioner was found appearing to have just taken a shower, which someone would have likely done if they had just come in contact with pepper spray.  See Davis v. McAllister, 631 F.2d 1256, 1261 (5th Cir. 1980) (court can examine both direct and circumstantial evidence when determining the sufficiency of evidence).

Accordingly, it is respectfully recommended that there was sufficient evidence to support Petitioner's conviction.

**F.    Petitioner's Ineffective Assistance of Counsel Claims Are Without Merit.**

To prevail on a claim of ineffective assistance of counsel, a state prisoner seeking federal habeas corpus relief bears the burden of showing that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense.  Strickland v. Washington, 466 U.S. 668, 687 (1984).  This test applies to

claims concerning either trial or appellate counsel.  Ries v. Quarterman, 522 F.3d 517, 531 (5th Cir. 2008) (citations omitted).  In order to show counsel's performance was deficient, the petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  Id.  The petitioner must demonstrate that counsel's representation fell below an objective standard of reasonableness as measured by prevailing professional standards.  See Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998) (citations omitted).

Counsel's challenged conduct should be evaluated from the perspective of counsel at the time the conduct occurred.  Strickland, 466 U.S. at 690.  Due to the difficulties inherent in engaging in this analysis without being tainted by "the distorting effects of hindsight," a court's review should be highly deferential to counsel.  Id. at 689.  The reviewing court must give great deference to counsel's performance, strongly presuming that counsel has exercised reasonable professional judgment.  Id. at 690; accord Romero v. Lynaugh, 884 F.2d 871, 876 (5th Cir. 1989).

The second prong of the Strickland two-part test is the actual prejudice prong.  Petitioner may not simply allege, but must affirmatively prove, prejudice.  Id. at 693.  Thus, he must affirmatively show how the actions of his counsel

deprived him of a fair trial.  See Czere v. Butler, 833 F.2d 59, 63-64 (5th Cir. 1987).  Prejudice results when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different."  Strickland, 466 U.S. at 694; see also Lockhart v. Fretwell, 506 U.S. 364, 372 (1993) (habeas petitioner must show that the trial result was unreliable, or the proceeding was fundamentally unfair due to counsel's deficient performance) (citations omitted).

Petitioner must establish "actual prejudice as a result of his counsel's ineffectiveness."  Moody v. Johnson, 139 F.3d 477, 482 (5th Cir. 1998) (citations omitted).  As the Fifth Circuit has firmly established, conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue.  Miller v. Johnson, 200 F.3d 274, 281-86 (5th Cir. 2000).  The Miller court further held that "'[i]n the absence of a specific showing of how these alleged errors and omissions were constitutionally deficient, and how they prejudiced [petitioner], ... we [can find] no merit to these claims.'"  Id. at 282 (quoting Barnard v. Collins, 958 F.2d 634, 642 (5th Cir. 1992)).

Petitioner has the burden of proof in a habeas proceeding attacking the effectiveness of counsel.  See Carter v. Johnson, 131 F.3d 452, 463 (5th Cir. 1997). He must demonstrate that his counsel's representation was unreasonable, and that

19

he suffered actual prejudice.  Id. (citation omitted).  The Fifth Circuit has held that "[t]he failure to prove either deficient performance or actual prejudice forecloses an ineffective assistance claim."  Green v. Johnson, 160 F.3d 1029, 1035 (5th Cir. 1998).  A court may dispose of an ineffective assistance of counsel claim by showing the petitioner failed to meet either prong; it is not necessary for the court to address both prongs.  Amos v. Scott, 61 F.3d 333, 348 (5th Cir. 1995) (citations omitted).

### 1.    Counsel was not ineffective for failing to object to the prosecution's case.

Petitioner first claims his trial counsel was ineffective when he failed to object to the prosecution's case in chief at trial.  (D.E. 1, at 8).  This claim mostly consists of broad, generalized assertions that counsel should have made objections, but Petitioner does not identify reasons for these objections or motions, or specify what matters they should have concerned.  Id. at 47-51.  His trial counsel challenged the prosecution's case by filing a pretrial discovery motion regarding victim impact statements, and cross-examining all of the prosecution's witnesses. Reporter's Record, Volume 2 of 4; Reporter's Record, Volume 4 of 4, at 22, 23, 41, 73, 93, 100, 127, 130.  For the most part, this claim should be dismissed as conclusory.  See Koch, 907 F.2d at 530.

However, Petitioner does specifically claim that counsel should have

objected to, and filed pretrial motions preventing, the testimony from Peebles that

he saw a picture of Petitioner on Officer Yarnall's computer screen. Id. at 47-48.

He additionally asserts that such testimony should have been supported by "written

documentation." Id. at 47. He does not claim that the identification was improper,

or that it tainted the subsequent identifications. Rather, he asserts that the picture

never existed, and that without written documentation of it, any related testimony

should have been barred. This claim is also conclusory. See Koch, 907 F.2d at

530. Objecting to the relevant testimony of what Peebles and Officer Yarnall saw

that night, which was relevant[1] to identifying Petitioner as the assailant, would be

futile without some other alleged constitutional violation. Based on the Texas

rules applied at trial, characterizing counsel's performance as deficient for failing

to object to this testimony would be incorrect. See Strickland, 466 U.S. at 687.

Furthermore, even if it was deficient, Petitioner would not have suffered prejudice.

See id. When Peebles saw the picture the night of the crime, Petitioner had already

been identified by tracing his phone number with which he called the cab

company. Officer Yarnall would have been led to him regardless of Peebles'

spontaneous identification.

---

[1] Tex. R. Evid. 401 ("'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.").

Accordingly, it is respectfully recommended that counsel was not ineffective for failing to object to the prosecution's case.

### 2.    Counsel was not ineffective for failing to secure witnesses.

Petitioner also claims his trial counsel was ineffective when he failed to secure witnesses for his defense.  (D.E. 1, at 8).  Defense counsel called King to testify at trial, <u>Northup</u>, 2009 WL 1623426, at *4, but Petitioner asserts he requested his counsel call as witnesses Michael Bacon, the previous owner of the trailer for whom Jeff and Denise were looking; Johnny Gonzalez, Petitioner's parole officer; and Richard Foley, his work supervisor.  (D.E. 3, at 52-54).

The Fifth Circuit has explained "that complaints of uncalled witnesses are not favored in federal habeas corpus review because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have stated are largely speculative."  <u>Day v. Quarterman</u>, 566 F.3d 527, 538 (5th Cir. 2009) (citation omitted).  "[T]o prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense."  <u>Id.</u> (citation omitted).

Here, Petitioner listed the names of his desired witnesses, as well as what he

hoped their testimony would have covered.  He theorized that Michael Bacon

possibly had some information about Jeff and Denise that would have corroborated

his alibi, and painted them as suspects.  (D.E. 3, at 52).  He expected Gonzalez and

Foley to testify that he abided by his parole requirements and was a good worker,

thus, providing mitigating evidence at his sentencing.  Id. at 54.  However, he did

not allege that any of them would be available to testify.  Indeed, he does not even

know of Bacon's whereabouts.  Nor was he sure that they would have testified to

his benefit.  While he may opine that their testimony would be favorable, he offers

no evidence to support this conjecture.  Thus, he has failed to meet the

requirements enunciated in Day.

Accordingly, it is respectfully recommended that counsel was not ineffective

for failing to secure witnesses.

### 3.    Counsel was not ineffective for failing to assist Petitioner in requesting a hearing for his motion for a new trial.

Finally, Petitioner claims his trial counsel was ineffective when he failed to

assist him at a critical stage in his appeal.  (D.E. 1, at 8).  Specifically, he alleges

that his attorney did not assist him in requesting a hearing for his motion for a new

trial.  (D.E. 3, at 58).  Neither the Supreme Court nor the Fifth Circuit have "yet

determined whether the right to counsel attaches on a motion for new trial."

Graves v. Cockrell, 351 F.3d 143, 155 (5th Cir. 2003) (citation omitted).

23

Therefore, Petitioner has not established definitively the existence of a claim cognizable for habeas review.

Assuming <u>arguendo</u> a cognizable claim, Petitioner's trial counsel was not ineffective because he cannot show he suffered prejudice.  He timely[2] filed his motion for a new trial on September 17, 2007.  <u>Northup</u>, 2009 WL 1623426, at *4.  He alleges no reason why he could not himself have requested a hearing.  Furthermore, he does not allege that the lack of an attorney's assistance prevented him from presenting any specific facts, objections, or defenses to the court.  In fact, the two memoranda he filed, spanning ten pages total of fact and argument, support the conclusion that he fully and adequately presented his motion to the court.  Clerk's Record, Volume I of I, at 44-47, 50-55.

Accordingly, it is respectfully recommended that counsel was not ineffective for failing to assist Petitioner with his motion for a new trial or his appeal.

## IV.  CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the Fifth Circuit from a final order in a habeas corpus proceeding "[u]nless a circuit justice or judge issues a certificate of appealability."  28 U.S.C. § 2253(c)(1)(A).  Although Petitioner has not yet filed a

---

[2] Tex. R. App. P. 26.2(a)(1) (a defendant's "notice of appeal must be filed within 30 days after the day sentence is imposed or suspended in open court, or after the day the trial court enters an appealable order").

notice of appeal, it is respectfully recommended that this Court nonetheless address whether he would be entitled to a certificate of appealability.  A district court may sua sponte rule on a certificate of appealability because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court.  Further briefing and argument on the very issues the court has just ruled on would be repetitious."  Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000) (per curiam).

The statute establishes that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits."  Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).  To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Slack v. McDaniel, 529 U.S. 473, 484 (2000).  This standard requires a § 2254 petitioner to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further.  United States

v. Jones, 287 F.3d 325, 329 (5th Cir. 2002) (citation omitted).

As to claims district courts reject solely on procedural grounds, a petitioner must show both "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  Slack, 529 U.S. at 484 (emphasis added).

It is respectfully recommended that reasonable jurists could not debate the denial on substantive or procedural grounds nor find that the issues presented are adequate to proceed.  Miller-El, 537 U.S. at 327 (citing Slack, 529 U.S. at 484). Accordingly, it is respectfully recommended that the Court find that Petitioner is not entitled to a certificate of appealability.

## V.  RECOMMENDATION

Based on the foregoing, it is respectfully recommended that Respondent's motion for summary judgment, (D.E. 30), be granted, and the petition, (D.E. 1), be dismissed.  Moreover, it is respectfully recommended that Petitioner's ex parte motion, (D.E. 6); motion for judgment of acquittal, (D.E. 11); motion for a new trial, (D.E. 12); and motion for habeas corpus ad subjuciendum, (D.E. 13); be denied.  Finally, it is respectfully recommended that a certificate of appealability be denied.

Respectfully submitted this 10th day of August 2010.

_____
BRIAN L. OWSLEY
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to 28 U.S.C. § 636(b)(1)(C); Rule 72(b) of the Federal Rules of Civil Procedure; Rule 8(b) of the Rules Governing § 2254 Cases; and Article IV, General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415 (5th Cir. 1996) (en banc).

28